### THE STATE *v.* THE JUDGE OF THE FOURTH JUDICIAL DISTRICT.

N. having obtained an injunction from a District Court to arrest the execution of a writ of possession, issued from a Probate Court, on the ground that no judgment had been rendered under which the writ could be issued, B., by whom the writ had been obtained, moved to dissolve the injunction for reasons apparent on its face. The motion was overruled, and B. answered, pleading the general issue, and averring that a judgment had been rendered under which the writ of possession was issued. While these proceedings were pending, B. applied to the Supreme Court for a writ of prohibition to the judge of the District Court, on the ground that he had exceeded his jurisdiction. *Held,* that no prohibition could be issued, when the very matter for which it is sought to be obtained is denied, and is the main point in litigation, yet untried in the lower court. *Per Cur.* To grant a prohibition, would be to try the case on its merits, before an appeal. The want of jurisdiction in the District Court does not appear on the face of the petition ; and it is not shown that the inferior judge has refused, after being made aware of the existence of a judgment of the Court of Probates, to declare his want of jurisdiction, which depends on the existence of such a judgment.

The writ of prohibition is an extraordinary one, and should be issued only in cases of great necessity, clearly shown, and where the party has applied, in vain, to the inferior tribunals for relief.

APPLICATION for a prohibition to *Deblieux*, Judge of the Fourth Judicial District.

*Robertson* and *R. H. Chinn*, for the applicant.

*Lobdell* and *Labauve*, contrâ.

SIMON, J. In answer to the provisional order of prohibition, issued in this case in January last, and notified to the Judge of the Fourth Judicial District, based upon the sufficiency of the matters stated in the petition of Pierre Paul Babin, our learned brother has informed us, " that when the provisional injunction complained of was applied for, he considered that, under the allegations under oath of the party, showing that *there was no judgment upon which the writ of possession under which the sheriff*

*claimed to act could be based,* the sheriff and Babin were to be viewed as mere trespassers, and that to such a case, the rule of law giving the execution of judgment to those courts alone which rendered them, did not apply." He further states, that "he considered that cases might arise in which documents purporting to be writs of a court might be obtained, without any previous action or participation of the judge of said court. That, in the case stated in Nolan's petition, the facts related show, that it was impossible that a judgment could have been rendered, as the court is stated to have adjourned without rendering a judgment, and the writ to have been procured after it met again."

The learned judge further says, that "when the cause came up before him at the December session, on a motion to dissolve summarily the injunction, for reasons apparent on the face of the petition, he still maintained his former opinion, as by the motion thus made the defendant admitted, for the time, the facts as stated in the petition, and as they resulted in establishing, as the court thought, that there was no judgment rendered in the Court of Probates, upon which a writ of possession could be founded; and as, on neither of the above occasions was the existence of a judgment, formal or informal, suggested;" and he concludes with the remark, that "had the existence of a judgment, apparently formal, been shown by Babin, the injunction would have been instantly dissolved, under his conviction that the principle reserving the execution of judgments and the staying of proceedings under them to the courts by whom they were rendered, is a law of the land." A copy of the petition upon which the injunction was granted, of the proceedings had below on the motion to dissolve it, and of the defendant's answer, accompanies the answer of the judge; and it appears thereby that, after the motion to dissolve the injunction had been overruled, the defendant, Babin, filed his answer, in which, after pleading the general issue, he avers that there was a judgment homologating the partition in the Probate Court, which, he states, he is ready to produce, and show upon the trial of the case.

Now, on referring to the petition on which the writ of injunc-

tion was obtained, we find the following allegations: "That the oppositions made by Nolan to the homologation of the partition, were fixed to be tried on the 26th of September, 1844 ; that on the day so fixed for said trial, the parties appeared in open court, and the said oppositions were tried, *but that there was no judgment overruling the said opposition, nor homologating the said partition, rendered and read in open court, on the day of the trial thereof ;* and that, immediately after said trial, the Court of Probates adjourned to the first Monday in October, 1844, *without rendering and reading in open court any judgment, either overruling the said opposition, or homologating the said partiion.*" The petitioner further states : "*that there is not, and cannot be any judgment* executory homologating the partition aforesaid, and referred to in the writ of possession, and decreeing the slaves therein named as Babin's property, &c." He also represents "that he notified the sheriff *of the non-existence of any such executory judgment, &c. ;* and he prays that a writ of injunction may issue and that the sheriff and Babin may be condemned to pay him one thousand dollars damages."

It is obvious from the allegations set forth by Nolan in his petition for an injunction, which were regularly sworn to by him, and from the allegations contained in Babin's petition for a writ of prohibition, which are also sworn to by the latter, that they are at issue upon the question, or rather upon the fact of the existence or non-existence of the judgment upon which the writ of possession was issued, and that such issue, shown to have been joined below by Babin in the injunction suit, is now pending before the District Court. Hence the question presents itself : Have we the power of granting a writ of prohibition, when the very matter upon it is sought to be obtained is denied, and appears to be the main subject in litigation, yet untried and pending in the lower court, in the very suit which the applicant seeks to take from the cognizance of the inferior tribunal? Would not such a proceeding, on our part, amount to trying the case on its merits, without its being before us on an appeal.

It has already been seen that nothing in the petition for an injunction indicates that any judgment, however informal it

might have been, ever was rendered by the Probate Court upon which the writ of possession complained of could have issued. On the contrary, it states in positive terms that none was ever rendered and read in open court; that said court adjourned to a further period without rendering and reading any such judgment; and that there was not and could not be any judgment executory as referred to in the writ enjoined. Thus the inferior judge far from being apprized of the existence of a judgment, had every reason to believe that the sworn allegations of the plaintiff in injunction were true; and that by taking cognizance of the case, he was not violating the principle of law, which he recognizes himself, in his answer to the rule, as being the law of the land. He was not exceeding the bounds of his jurisdiction, as he had no other means of ascertaining the true state of the facts which gave rise to the application for an injunction, than the allegations upon which such application was founded; and as, in order to take the case out of the court, it was perhaps the duty of the defendant not to make a motion to dissolve the injunction on the face of the petition, (which would have been an admission of the facts therein stated,) but to file his plea to the jurisdiction of the District Court, based upon the existence of the judgment, however informal or irregular it might have been, upon which the writ of possession had been issued. This, however, appears to be now the very issue joined below, as resulting from the defendant's answer to the merits of the controversy, and as this matter has never been tried, nothing shows that the inferior judge has ever refused, on being made aware of the existence of the judgment of the Court of Probates, if any such really exists, to declare that he has no jurisdiction in granting the writ of injunction, and in taking cognizance of the matter upon which it was obtained. It is certain that such want of jurisdiction did not appear on the face of the petition, and as we said, in the case of *The State* vs. *The Judge of the Commercial Court*, the writ applied for is an extraordinary one, and should only be issued in a case of great necessity, when clearly shown; and before we will issue it, it must appear that the applicant has applied, in vain, to the inferior tribunals for relief. 4 Rob. 50. Here, it will be conceded, that the jurisdiction of the District

Court depends upon the existence or non-existence of the judgment alluded to in the applicant's petition; and although we have been furnished with a copy of a judgment, said to be the one of which the existence is denied in Nolan's petition for an injunction, we do not feel ourselves authorized to express any opinion on this matter, and to say now that the District Judge has exceeded his jurisdiction. It would be deciding the case on its merits, and it will be time enough to consider this question after the judge *a quo* shall have expressed his views upon it, if the case ever comes before us on an appeal from his decision.

The rule is, therefore, discharged.